**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Dell POTTER,
Defendant-Appellant.**

No. 78-3568.

United States Court of Appeals,
Ninth Circuit.

Dec. 28, 1979.

Rehearing Denied April 24, 1980.

Richard J. Prendergast, Chicago, Ill., for defendant-appellant.

Lawrence R. Leavitt, Asst. U. S. Atty., Las Vegas, Nev., for plaintiff-appellee.

Before WRIGHT and TANG, Circuit Judges and JAMESON,* District Judge.

JAMESON, District Judge.

A jury found appellant, James Dell Potter, a Nevada physician, guilty on 54 counts of unlawfully distributing controlled substances in violation of 21 U.S.C. § 841(a)(1).[1] We affirm the judgment of conviction.

### Factual Background

Appellant is licensed to practice medicine in the State of Nevada and at the time of trial was registered with the Drug Enforcement Administration to prescribe and dispense controlled substances for legitimate medical purposes. In a 54 count indictment

---

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. § 841(a) provides that "it shall be unlawful for any person knowingly or intentionally . . . to distribute, or dispense, or possess with intent to . . . distribute, or dispense, a controlled substance . . . ."

"[B]y creating the means by which controlled substances can be transferred a doctor 'distributes' within the meaning of 21 U.S.C. § 841(a) by the act of writing a prescription outside the usual course of professional practice and not for a legitimate medical purpose." *United States v. Davis*, 564 F.2d 840, 845 (9 Cir. 1977), *cert. denied*, 434 U.S. 1015, 98 S.Ct. 733, 54 L.Ed.2d 760 (1978).

he was charged with prescribing controlled substances for five persons, "not in the usual course of professional practice" and "not for a legitimate medical purpose". The testimony of these five persons, including an employee of the Nevada Division of Investigation and Narcotics, provided the factual basis for the Government's case.

Gloria Kranjack, a cocktail waitress, testified that she first visited Dr. Potter's office in February, 1977, to obtain a prescription for quaalude, a controlled substance.[2] She told Potter that she needed the drug to help her sleep. She also requested a prescription of quaalude for her husband and a prescription of dexedrine, another controlled substance,[3] for herself. Dr. Potter provided the prescriptions. With little or no medical examination,[4] he refilled the prescriptions on several subsequent visits through October, 1977.

Dawn Marie Campbell, a 22 year old dancer, visited the doctor initially in March, 1977, to obtain a prescription for quaalude and to be treated for a bronchial condition. After giving her a medical examination, Dr. Potter prescribed penicillin for her bronchitis. He also wrote two prescriptions for quaalude when she complained that she was having difficulty sleeping. He told her to have the prescriptions filled at different pharmacies.[5]

Campbell testified that after her bronchitis had subsided she again visited Dr. Potter at his office. She again requested quaalude. Potter then asked her to perform fellatio on him and while the sexual act was being performed, he wrote a prescription for quaalude. On several subsequent visits Potter prescribed both quaalude and other controlled substances. Campbell testified that on two occasions she again engaged in oral sex at the doctor's request and each time received double prescriptions. Often when Dr. Potter wrote double prescriptions he wrote one in the name of "Dawn Campbell" and the other in the name of "Marie Campbell".

Sheri Cosner, a 22 year old prostitute, testified that she visited appellant's office several times between 1975 and 1977 and received prescriptions for controlled substances. She testified that during several visits she performed oral sex for appellant at his request and at the same time received prescriptions for drugs. On one of these occasions, she and her girl friend performed oral sex for him together. She testified that the doctor would use different names when writing more than one prescription and that she told him that she was giving some of the drugs to her friends.

Karen Ribeiro, a female undercover agent with the Nevada State Division of Investigation and Narcotics, testified that she first visited appellant on August 12, 1977, after an audit revealed that he had been writing an inordinate amount of prescriptions for quaalude. After a brief medical examination, Ribeiro told the doctor that she and her boy friend needed quaalude for their social activity. He wrote her prescriptions for quaalude, preludin and dexedrine, although she stated she had no medical difficulties.

---

**2.** The Government's expert witness, Matthew J. Ellenhorn, M.D. testified that methaqualone, or "quaalude", is a depressant with a potential for psychological and physical dependency, and which, if taken excessively, can be lethal.

**3.** The Government's expert testified that dexedrine is an amphetamine which is used solely in dietary treatment of obesity. It is a stimulant.

**4.** Gloria Kranjack testified that Dr. Potter did not at any time examine her, take her medical history, or question her concerning her use of the drugs. Her husband, Richard, first visited Potter after twice receiving prescriptions. Although Potter conducted a physical examination and took Kranjack's medical history, he made no inquiry concerning Kranjack's medical need for the drugs.

**5.** A doctor's suggestion that prescriptions be taken to different drugstores and not filled at the same one is a significant factor in proving that the doctor was not acting for a legitimate medical purpose and in the usual course of his professional practice. Law enforcement agencies check drugstores for prescriptions issued on controlled substances. A doctor, to avoid suspicion, may attempt to limit the number of prescriptions to be filled at each drugstore. See *United States v. Larson*, 507 F.2d 385, 387–88 (9 Cir. 1974); *United States v. Bartee*, 479 F.2d 484, 489 (10 Cir. 1973).

Ribeiro testified that on a second visit two weeks later appellant stated that he wasn't sure of her. "He was leery of me, stating that State Narcotics had come to his office earlier and they maybe using women now." He still wrote her prescriptions. On a third visit on October 13, 1977, he stated that "the State Narcotics had just arrested Dr. Russell for prescribing too many quaalude, so he had to be careful." Nevertheless he wrote prescriptions for her for quaalude and for her "boy friend" for preludin, using the name of Jill Bogart, and a third prescription for Ribeiro for dexedrine, using her middle name. He cautioned her to take the prescriptions to different pharmacies.

Dr. Matthew J. Ellenhorn, who qualified as an expert in the fields of medicine and pharmacology, testified for the Government regarding the controlled substances and standards of medical care and practice in prescribing them. In response to hypothetical questions, he testified that, with little exception, the testimony of the Government witnesses indicated no legitimate medical purpose for the many prescriptions for quaalude.

Dr. Potter testified in his defense that he had never had sexual relations with anyone in his office and denied all allegations of improper conduct in the examination and treatment of the Government witnesses.

### Contentions on Appeal

Appellant contends that the trial court erred in (1) permitting testimony that the defendant had sexual relations with his patients, (2) failing to give a proper limiting instruction on the evidence of the sexual relations, and (3) allowing testimony concerning the arrest of another doctor for illegally prescribing controlled substances; and (4) that improprieties in the Government's closing argument deprived him of a fair trial.

6. Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice,

### I. Evidence of Sexual Conduct

■ Appellant contends that testimony concerning repeated occurrences of oral sex in his office with the various Government witnesses should have been excluded as irrelevant under Fed.R.Evid. 404(b), and even if relevant, as unfairly prejudicial under Rule 403. We disagree.

Rule 404(b) provides:

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Here the evidence was not offered to impugn character, as appellant argues, but rather to prove motive and lack of good faith intent in failing to comply with usual "professional practices" and "legitimate medical purposes".

Rule 404(b) is "one of inclusion which admits evidence of other crimes or acts relevant to an issue in the trial, except where it tends to prove *only* criminal disposition". *United States v. Rocha*, 553 F.2d 615, 616 (9 Cir. 1977). This "inclusionary rule", however, is subject to the balancing test of Rule 403.[6] *United States v. Sangrey*, 586 F.2d 1312, 1314 (9 Cir. 1978).

The record contains substantial evidence that there was often no legitimate medical purpose for appellant's dispensing of controlled substances. The motive for his prescribing the controlled substances was unclear. From the evidence that the doctor engaged in sexual activities with his patients simultaneously with the writing of prescriptions the jury could properly infer that the granting of sexual favors provided at least some incentive for his actions. It was not necessary, as appellant argues, for the Government to prove that the issuance of the prescriptions was conditioned upon

confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

the granting of sexual favors. It was sufficient that the sexual favors provided an inducement to prescribe controlled substances without legitimate medical purpose.[7] The sexual acts were clearly connected with the illegal transactions.

The evidence of sexual conduct was also relevant to an element of the crime: the defendant's lack of good faith in medically treating his patients. The trial court, at the defendant's request, instructed the jury as follows:

A controlled substance is prescribed by a physician in the course of his professional practice, and therefore lawfully, if the substance is prescribed by him in good faith in medically treating a patient.

In order to determine whether or not a prescription or prescriptions were issued in the course of a defendant physician's professional practice, you may consider *all the evidence of circumstances surrounding the prescribing of the substance in question*, the statements of the parties to the prescription transaction, any expert testimony as to what is the usual course of medical practice, *and any other competent evidence bearing on the purpose for which the substances in question were prescribed.* (emphasis added).

Unless you find beyond a reasonable doubt that the act of prescribing charged in the indictment was not done for a legitimate medical purpose in the usual course of professional practice, then you should find the Defendant not guilty.[8]

The evidence of sexual activities between the doctor and his patients at the time that

he prescribed the substances in question was "competent evidence bearing on the purpose for which the substances . . . were prescribed". The evidence was relevant and admissible to determine whether or not the prescriptions were issued in the course of the doctor's "professional practice" and "prescribed by him in good faith in medically treating a patient".

Evidence relevant under Rule 404(b), however, must be "excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Rule 403. In *United States v. Sangrey, supra*, we refused "to require a mechanical recitation of Rule 403's formula on the record as a prerequisite to admitting evidence under Rule 404(b)," and concluded that the demands of Rule 403 are met if it "appears from the record as a whole that the trial judge adequately weighed the probative value and prejudicial effect of proffered evidence". 586 F.2d at 1315.

It is true, as appellant argues, that the trial judge did not articulate the balancing of the probative value of the evidence with its possible prejudicial effect. It may be noted, however, that no objection was made when Dawn Campbell testified that she performed sexual favors for the doctor; nor was there any objection when Sheri Cosner first testified concerning her sexual experiences with the doctor. It was not until the prosecution began to develop testimony that Cosner and her girl friend visited the doctor and performed sexual acts for him together, that any objection was interposed.[9] Although this objection preserved

---

7. Moreover, while there is no evidence that the issuance of prescriptions was conditioned upon sexual favors, Sheri Cosner did testify that several times there was no charge for her "visits" to the doctor's office "Because I gave the doctor head." (Tr. p. 204.)

Campbell testified that when she requested a prescription for quaalude on her first visit, appellant told her that quaalude was good for sex and gave her a second prescription for her boy friend. (Tr. p. 130–31) After she performed fellatio upon appellant on her second visit, he wrote her a second prescription. (Tr. p. 134–35)

8. The instruction was taken verbatim from an instruction approved in *United States v. Green*, 511 F.2d 1062, 1071 (7 Cir. 1975).

9. In a bench conference when Cosner was called as a witness, appellant's counsel referred to a statement she had made to officers and her testimony before the Grand Jury and stated that "the witness should be restricted to items that are in the indictment." Government counsel indicated that they intended "to offer evidence of a prolonged relationship with this defendant . . . to show the intent and motive". The court stated that the defendant could make his objection "at the appropriate time" and that the Government was entitled to

the defendant's right on appeal for all similar evidence subsequently introduced,[10] it did not affect the admissibility of evidence previously admitted without objection. This evidence could properly be considered by the jury under appropriate instructions.[11]

■ We cannot say that under the circumstances of this case the failure of the trial judge to formally articulate the balancing test constituted reversible error. Obviously the testimony was prejudicial to the defendant, but it was relevant on issues of motive and whether the prescriptions were made "in the usual course of professional practice" and "for a legitimate medical purpose".[12] The trial judge expressly ruled at a bench conference (see Note 9) that the testimony was relevant, even though he did not expressly articulate the balancing test. It is clear from our own evaluation of the record that the probative value of the relevant evidence was not "substantially outweighed by the danger of unfair prejudice". (Rule 403) Any error of the trial judge in failing, sua sponte, to set forth the reasons for his ruling did not "affect substantial rights" of the defendant and may be disregarded. Fed.R.Crim.P. 52(a).

## II. *Limiting Instruction*

■ When evidence is admitted under Rule 404(b), the trial court "should ordinarily instruct the jury carefully as to the limit-

ed purpose for which the evidence is admitted." *United States v. Sangrey, supra,* 586 F.2d at 1314. If the defendant does not request a limiting instruction, however, the failure of the court to give the instruction does not necessarily result in reversible error. *Id.* "Should the court give such an instruction, either on request or on its own motion, the court must be careful to instruct the jury correctly as to the limited purpose for which the evidence is admitted." *United States v. Back,* 588 F.2d 1283, 1287 (9 Cir. 1979).[13]

No limiting instruction was requested by appellant. The court, however, gave the following instruction *sua sponte* :

> The defendant is not on trial for any act of conduct of his that is not charged in the indictment. The defendant is not on trial for having sexual relations with patients. You should consider the evidence of sexual relations, if you believe it took place, only to determine whether or not the defendant is guilty of the unlawful distribution of controlled substances as charged in the indictment.

Appellant did not object to the instruction or request any modification.[14] He contends on appeal that giving the instructions was "plain error". He argues that the instruction did not properly limit the manner in which the jury would consider the evidence concerning appellant's sexual relations and "served to enhance the possibility that the verdict would be premised on the belief that

show acts to establish intent or motive and that the "relationship with any particular witness of this sort with the doctor is totally relevant".

Counsel for appellant made no objection until Government counsel started to interrogate Cosner regarding "what happened" when she and her girl friend entered the doctor's office. Appellant's counsel then said, "I'm going to object, I am familiar with what the purpose of the Government is and I am going to object on the grounds that it serves nothing but to prejudice the Defendant here and it doesn't tend to prove or disprove anything of the issues made by the Indictment." No request was made for oral argument or for balancing under Rule 403. The objection was overruled without comment.

10. See, *e. g., Evalt v. United States,* 359 F.2d 534 (9 Cir. 1966).

11. The admission of the testimony of Campbell and Cosner prior to the objection was not "plain error" under F.R.Crim.P. 52(b).

12. Moreover, there was no other evidence having more probative value on these issues, but involving less likelihood of prejudice. *Cf. Eichel v. New York Central R.R. Co.,* 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963).

13. An improper limiting instruction may even enhance prejudice to a point where unfair prejudice outweighs probative value. *Id.* at 1287.

14. Apparently this instruction was not discussed with counsel at a conference on suggested instructions prior to oral argument and was added by the court without conferring with counsel.

the defendant was 'unsavory' and a 'bad person'."

■ The Government recognizes "that the instruction could have been more carefully drawn to delineate · the manner in which the jury could consider the evidence of sexual relations." It contends, however, that in the context of the instructions as a whole, the instruction could not have misled the jury, was not prejudicial to appellant, and accordingly did not constitute plain error. We agree.

In the limiting instruction itself the court expressly cautioned the jury that the defendant was "not on trial for any act or conduct of his not charged in the indictment" nor "for having sexual relations with his patients". Rather should the jury believe that the sexual acts took place, it could consider this evidence "only to determine whether or not the defendant is guilty of the unlawful distribution of controlled substances as charged in the indictment."

The court gave the special instruction offered by the defendant, which we have quoted above, that in determining whether the prescriptions "were issued for a legitimate medical purpose in the course of a defendant's medical practice", the jury may consider "all of the evidence of circumstances surrounding the prescribing of the substances in question" and any "competent evidence bearing on the purpose for which the substances in question were prescribed." The court emphasized, by repeating it, the concluding paragraph that the jury should find the defendant not guilty unless it found "beyond a reasonable doubt that the act of prescribing charged in the indictment was not done for a legitimate medical purpose in the usual course of professional practice." Other instructions covered fully the essential elements of the offense. The jury was also properly instructed that the "motive of the accused is immaterial except insofar as evidence of motive may aid you in determining his state of mind or intent. . . . You may infer the defendant's intent from all the surrounding circumstances in the case."

■ Instructions are not to be read in isolation. "The question is whether the complete package was misleading or represented a statement inadequate to guide the jury's deliberations." *United States v. Elksnis*, 528 F.2d 236, 238 (9 Cir. 1975) (citing *United States v. Park*, 421 U.S. 658, 673–676, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975)). Viewing the instructions as a whole, we cannot say that the jury was misled by the court's limiting instruction. It is clear that the evidence of sexual relations, as well as other evidence, was to be considered in determining whether appellant was acting in "the usual course of professional practice" and "for a legitimate medical purpose" in treating patients Campbell and Cosner. The giving of the limiting instruction was not plain error.

### III. *Testimony Concerning Dr. Russell*

Dawn Campbell testified that prior to seeing appellant she had been getting quaalude prescriptions from a Dr. Russell, but decided to stop seeing him when she heard he had been arrested. Agent Ribeiro testified that when she visited appellant on October 13, 1977, he told her that he had to limit his quaalude prescriptions to her, stating that state narcotics agents had just arrested Dr. Russell for prescribing too many quaaludes. Appellant testified on cross-examination that he did not remember this conversation with Agent Ribeiro. Upon further questioning he stated that he did not know Dr. Russell, but that sometime in 1977 he heard that Dr. Russell had been indicted.

■ Appellant contends that (1) the Government's only purpose in introducing this evidence was to attempt to obtain a conviction through guilt by association; and (2) the trial court erred in failing to weigh its probative value against prejudicial effect, as required by Rule 403. We find no merit in either contention.

(a) Testimony of Agent Ribeiro and Dr. Potter.

No objection was made to the Government's questioning of Agent Ribeiro or Dr.

Potter. The admission of this testimony clearly was not "plain error". The "plain error" of Rule 52(b) is invoked only in "exceptional situations" where it is necessary "to prevent miscarriage of justice or to preserve the integrity and reputation of the judicial process". *United States v. Larson, supra,* 507 F.2d at 387 (quoting *Marshall v. United States,* 409 F.2d 925, 927 (9 Cir. 1969)).

In any event, the evidence was relevant to the question of appellant's good faith in issuing the prescriptions and consciousness of guilt. In *United States v. Bartee, supra,* the defendant, a physician, was convicted of dispensing controlled substances in violation of 21 U.S.C. § 841(a). He had written prescriptions to a police agent who had posed as one of his patients. In holding that the totality of the evidence supported the inference that the defendant "was not acting for a legitimate medical purpose and [such] was not within the usual course of his professional practice," the court stated that, "Perhaps the most damning evidentiary matter was the testimony by agent Coller that Dr. Bartee said that he had to be careful since the BNDD (Bureau of Narcotics and Dangerous Drugs) checked the drugstores for prescriptions issued . . . ." 479 F.2d at 489. We quoted this language with approval in *United States v. Larson, supra,* 507 F.2d at 387, where we considered the sufficiency of the evidence to sustain the conviction of a physician for violation of 21 U.S.C. § 841(a).

Agent Ribeiro's testimony that appellant told her he would have to be careful because Dr. Russell had recently been arrested is analogous to the testimony in *Bartee.* In both cases the testimony indicated that the doctors were taking precautionary measures to prevent law enforcement agencies from learning of their actions. This evidence was clearly relevant. It was also proper for the Government on cross-examination to question appellant concerning his conversation with agent Ribeiro.

Nor is there merit in appellant's contention that the court erred in failing *sua sponte* to make articulate a balancing test under Rule 403. The evidence concerning Dr. Russell did not involve evidence of other crimes or wrongful acts of appellant, admitted under Rule 404(b). If any balancing were required, it is clear that the probative value of this evidence sufficiently outweighed any prejudicial effect.

(b) Testimony of Dawn Campbell

An objection was made to Dawn Campbell's testimony that she came to Dr. Potter for quaalude when she learned that Dr. Russell had been arrested. The relevancy of this testimony is questionable. Later, however, agent Ribeiro testified, without objection, that after ascertaining from drugstore checks that Campbell had obtained prescriptions from both Dr. Russell and Dr. Potter, she interviewed Campbell to find out her reason for doing so. Particularly in view of the subsequent testimony regarding Dr. Russell, it is clear that any error in admitting Campbell's testimony did not "affect the substantial rights of the defendant" (Rule 52(a)) and was harmless beyond a reasonable doubt.

IV. *Impropriety of Government's Closing Argument*

Appellant contends that "the Government's closing argument, taken as a whole, deprived him of a fair trial", in that the prosecutor (1) appealed to the emotions and prejudice of the jurors by emphasizing the evidence of sexual activities; (2) interjected his personal belief concerning the issues of guilt and credibility of witnesses; (3) contained inflammatory and improper attacks on appellant's character; and (4) improperly referred to the failure of appellant to call certain witnesses and to produce certain documents. With one exception, appellant did not object to any of the statements of which he now complains. He must, therefore, demonstrate plain error as to the other statements. F.R.Crim.P. 52(a).

This court has held repeatedly that "improprieties in counsels' arguments to the jury do not require a new trial unless they are so gross as probably to prejudice the defendant, and the prejudice has not been

neutralized by the trial judge." *United States v. Parker*, 549 F.2d 1217, 1222 (9 Cir.), *cert. denied*, 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977); *United States v. Rich*, 580 F.2d 929, 936 (9 Cir.), *cert. denied*, 439 U.S. 935, 99 S.Ct. 330, 58 L.Ed.2d 331 (1978); *United States v. Mikka*, 586 F.2d 152, 155 (9 Cir. 1978), *cert. denied*, 440 U.S. 921, 99 S.Ct. 1247, 59 L.Ed.2d 474 (1979). As we noted in *Rich*, "Counsel are necessarily permitted a degree of latitude in the presentation of their closing summations."

■ We find no merit in the contention that through the reference to sexual activities the Government appealed to the emotions and prejudices of the jury rather than proving the elements of the charges. The references to the alleged sexual activities were not excessive when the prosecution arguments are viewed as a whole.[15] The prosecutor made it clear that the evidence relating to sexual activities should be considered only in determining motive and purpose. The essential elements of the offense were properly stated by both the court and prosecutor, and the prosecutor emphasized that the question in each count was whether that "specific prescription was written in a good faith effort to treat a patient for a legitimate medical purpose". The court and prosecutor both clearly and properly informed the jury that their verdict must be based only on the charges in the indictment. We find no plain error in the prosecutor's argument relating to appellant's sexual activities.

It is true, as appellant argues, that there were instances where the prosecutor improperly interjected his own opinion and commented on factual matters not in the record. During his argument he commented on Sheri Cosner as follows:

It is quite apparent, I think, to everybody here that this is a girl that is not only accustomed to the usage of dangerous drugs, but it appears to me, based on observation, and it is your observation that counts, of course, that in light of her

testimony that she still uses quaaludes to this day.

The prosecutor also argued that "Dawn Campbell's problem may be . . . and I suspect they revolved . . . around the use of drugs."

Probably the most questionable comment was the prosecutor's argument in rebuttal that it was "not an unusual prosecution function" to promise not to prosecute a witness "who gives important testimony against an individual, who in the eyes of the Government has committed far more serious crimes. . . ." This comment, however, was in response to the argument of appellant's counsel that Dawn Campbell and Sheri Cosner might have a motive in giving damaging testimony since they "were given immunity from anything that might be involved in return for their testimony in this particular case."

■ We cannot say that these comments of the prosecutor were "so gross as probably to prejudice the defendant". In any event, any prejudice that may have resulted was "neutralized" by the court's instructions and the prosecutor's own comment: "I want to remind you once again . . . that the statements of counsel are not to be considered by you as evidence. Nothing I say is evidence . . . if I should make a misstatement . . . if I incorrectly state what in my view a witness said, my recollection doesn't count, it's your recollection that counts." See *United States v. Rich, supra*, 580 F.2d at 936.

Appellant complains that the prosecutor in rebuttal argued that the Government witnesses were "telling the truth" and that the defendant's testimony was "inherently incredible". We recognize that "[i]t is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or the guilt of the defendant." American Bar Association Standards relating to the Administration of Criminal Justice, The Prosecution Function § 5.8(b). The prosecutor's

---

**15.** As the Government has noted, the references to sexual activities appear on only eight of the 49 pages of the transcript covering the closing arguments.

argument, however, must be viewed in the context of the argument of appellant's counsel questioning the credibility of the Government's witnesses, including his comments with respect to agent Ribeiro that, "I'm not going to tell you that Miss Ribeiro was a fabricator or a liar"; but counsel was unable to "accept her testimony as being really credible."

In view of the sharp conflict between the testimony of the doctor and the key Government witnesses, the question of credibility was obviously important. Both counsel recognized that the issue of credibility must be decided by the jury. Viewing the argument as a whole with the court's instructions, we conclude that any prejudice in the prosecutor's argument was neutralized and, in any event, did not constitute plain error.[16]

■ Appellant complains further of the statement in the prosecutor's argument that, "If a doctor writes a prescription in bad faith . . . causing a dangerous drug to be delivered to somebody, he is no different from a street pusher", and counsel's reference to appellant as "neither self-respecting, honorable [nor] competent". These remarks were made in discussing the evidence in the case, and again no objection was made. These remarks clearly did not constitute plain error requiring a reversal. See, e. g., United States v. Taxe, 540 F.2d 961, 968 (9 Cir. 1976), cert. denied, 429 U.S. 1040, 97 S.Ct. 737, 50 L.Ed.2d 751, reh. denied, 429 U.S. 1124, 97 S.Ct. 1163, 51 L.Ed.2d 575 (1977).

Finally, appellant questions the propriety of the prosecutor's argument that appellant failed to produce certain witnesses and documents. Both sides agree that comment on the failure to produce evidence is permissi-

ble only when the evidence is peculiarly available to the opposing party. See Forsberg v. United States, 351 F.2d 242, 249 (9 Cir.), cert. denied, 383 U.S. 950, 86 S.Ct. 1209, 16 L.Ed.2d 212 (1965); 2 Wigmore § 285 (3d ed. 1940).

■ The prosecutor commented on the defendant's failure to call his nurse as a witness and suggested that she did not appear for fear that testimony in support of the doctor would be perjury. A "potential witness must be equally available both legally and practically". Kean v. C.I.R., 469 F.2d 1183, 1188 (9 Cir. 1972). In Samish v. United States, 223 F.2d 358 (9 Cir. 1955), we held that comment was permissible where the defendant failed to call his "faithful secretary" as a witness, noting that to say she "was equally available to both sides is to ignore plain facts". Id. at 365. A similar situation is presented here. See also United States v. Beekman, 155 F.2d 580 (2 Cir. 1946). The Government's suggestion that the nurse would have perjured herself had she testified was improper. We cannot find, however, that this was plain error requiring a reversal.[17]

The only objection to the prosecutor's argument was made when he commented on the failure of the doctor to produce the records of the Government's witnesses. The objection was on the ground that the defendant "would not be permitted, absent consent of a patient, to introduce the chart and medical record of the patient". The Government argued that in testifying concerning their relationship with the doctor, there was an implicit waiver of any privilege. The court commented, "Well, let's go on to another matter." Even assuming that the medical records would have been privileged, this reference was harmless er-

---

16. The defendant's failure to object is, of course, a factor to be considered. As we stated in White v. United States, 315 F.2d 113, 116 (9 Cir.), cert. denied, 375 U.S. 821, 84 S.Ct. 58, 11 L.Ed.2d 55 (1963).

[E]ven if there had been a taint of unfairness or prejudice (in argument), no voice was raised in protest—no objection ever raised— no chance given the trial court to cure any alleged error. This is a complete waiver.

17. Defendant also contends that it was improper for the prosecutor to comment on the defendant's failure to call an unnamed psychiatrist who treated Cosner and who, according to the defendant, recommended continued "quaalude treatment" for her. The defendant did not object to this argument at trial, however, and we find no plain error.

ror in view of the overwhelming evidence of guilt.

 While the prosecutor's closing argument contained some improprieties,[18] we are satisfied from our reading of the entire argument of both parties that the improprieties were not purposeful or flagrant. Read in isolation some may appear prejudicial, but read in the context of the entire argument and the court's instructions to the jury, any prejudice was neutralized and did not affect the substantial rights of the accused. The evidence against appellant was substantial, and the jury obviously accepted the testimony of the Government's witnesses.

Affirmed.

18. While we have concluded that any improprieties in the Government's closing argument do not require a reversal in this case, we again admonish Government counsel, as we did in *United States v. Mikka, supra,* 586 F.2d at 155, n. 6 and cases there cited, to observe recognized standards in their closing argument. See, *e. g.*, American Bar Association Standards, The Prosecution Function, § 5.8, Argument to the Jury.