No. 72–5405. AL-KARAGHOLI v. IMMIGRATION AND NATURALIZATION SERVICE. C. A. D. C. Cir. Certiorari denied.

MR. JUSTICE DOUGLAS, dissenting.

Petitioner, a nonimmigrant student, was admitted to the United States in January 1962, pursuant to § 101 (a) (15) of the Immigration and Nationality Act, 66 Stat. 167, as amended, 8 U. S. C. § 1101 (a)(15), with authorization to remain in the country in that status until

January 28, 1968. In June 1967, deportation proceedings were initiated against petitioner on the ground that he had failed to maintain his student status. These proceedings were apparently dropped.[1]

On January 5, 1968, prior to the date of the expiration of his visa, petitioner filed an application for an extension of time under the visa for the purpose of continuing his education. This application was denied by the Special Inquiry Officer on the ground that the petitioner's primary interest in remaining in the United States was to work as a street vendor and not to pursue his educational interests. Petitioner was granted until May 21, 1969, to leave the country. On May 13, 1969, his application for reconsideration, wherein he verified his admission to the Washington Technical Institute, was denied.

On March 4, 1970, a deportation hearing was held at which time petitioner was represented by counsel. The Special Inquiry Officer found petitioner deportable. On appeal, the Board of Immigration Appeals observed that the principal basis for petitioner's appeal—the denial of his request for an extension of his student visa—was not appealable or subject to review.

Title 8 CFR § 214.2 (f) (4), a rule promulgated by the Immigration and Naturalization Service, indicates that there is no review available of the decisions on applications for extensions of student visas. "The applicant shall be notified of the decision and, if the application is denied, of the reason therefor. No appeal shall lie from the decision." In light of this Court's decisions,

---

[1] At the hearing before the Special Inquiry Officer, it was determined that petitioner had discontinued his education and he was ordered deported. The Board of Immigration Appeals remanded the case with directions to the Special Inquiry Officer to reopen the hearing to consider evidence, which had not been before him, which verified petitioner's student status. No further hearing was held.

recognizing the fundamental rights involved in deportation, this regulation denies applicants due process of law.

As early as 1921 this Court recognized that fundamental rights were involved in observing that not only does deportation [2] deprive a person of his liberty, but, "[i]t may result also in loss of both property and life; or of all that makes life worth living." *Ng Fung Ho* v. *White,* 259 U. S. 276, 284. Because of the nature of the deprivation, although deportation is not technically a criminal penalty, this Court has concluded that *"deportation is a penalty*—at times a most serious one . . . . Meticulous care must be exercised lest the procedure by which he [the alien] is deprived of that liberty not meet the essential standards of fairness." *Bridges* v. *Wixon,* 326 U. S. 135, 154. (Emphasis supplied.)

This Court has held that the denial of a motion to reopen by the Special Inquiry Officer is reviewable as a "final order of deportation." *Giova* v. *Rosenberg,* 379 U. S. 18; *Foti* v. *Immigration and Naturalization Service,* 375 U. S. 217. At least one federal court of appeals has interpreted these cases to authorize judicial review of a decision on an issue stemming from a deportation proceeding. *Rose* v. *Woolwine,* 344 F. 2d 993 (CA4).

Contrary to Regulation § 214.2 (f) (4), an order of the Special Inquiry Officer denying an application for an extension of time under a currently valid visa does operate as a final order and must be subject to judicial review.

---

[2] That approach is as important in dealing with deportation of students as it is in other alien cases. These days students are often political targets of their home country. Both Iran and Taiwan have been notorious in seeking our aid in deporting students, so that the students can be executed on their return for their opposed political ideas. While cancellation of the student visa in these troubled days may be sought for that purpose, Iraq does not seem to be the force behind the scenes in the present case.

When the extension is denied, a deportation date is set. The alien is given no recourse to challenge this deportation other than to leave the country and attempt to regain entry or to stay in the United States illegally in hopes of obtaining review in a deportation proceeding. But, as in the instant case, that review is so limited as to be nonexistent, when the Board of Immigration Appeals feels compelled by Regulation § 214.2 (f)(4) not to give any consideration to the denial of the extension or the reasons thereunder.

Such a result would appear to be contrary to the provisions of the Administrative Procedure Act [3] (5 U. S. C. § 704) wherein "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. *A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action."* (Emphasis supplied.) It is asserted that petitioner was not seeking a true student status because his main purpose was to work here. That is a gross distortion of the record. Petitioner was and is a true student, whether brilliant or mediocre being not material. He is a penniless student and works his way through the schools here in the District of Columbia by being a vendor of articles in the parks and other places. He has no criminal record; his mastery of the English language is not superior, and he has problems understanding the requirements of our laws and the procedures before our bureaucracy, just as an American studying in Baghdad would have great difficulty in toeing the line of Arabic law as construed and applied by Iraqi officials.

I would grant the petition for certiorari and put the case down for oral argument.

---

[3] See Sofaer, Judicial Control of Informal Discretionary Adjudication and Enforcement 72 Col. L. Rev. 1293, 1348 *et seq.* (1972).