**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Peter LARM, M.D., and Haruko Larm, Defendants-Appellants.**

No. 85–1348.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 13, 1987.

Decided Aug. 12, 1987.

Peter L. Yee, Honolulu, Hawaii, for plaintiff-appellee.

Richard K. Perkins and Renee M.L. Yuen, Honolulu, Hawaii, for defendants-appellants.

Before WALLACE, KENNEDY and WIGGINS, Circuit Judges.

KENNEDY, Circuit Judge:

Peter Larm, M.D., and his wife Haruko Larm, appeal from their convictions for violations of 42 U.S.C. § 1396h(a)(1) (false statements in an application for payments in a federally-approved plan for medical assistance). We conclude there was sufficient evidence to support the convictions, and that the district court did not otherwise err. We affirm.

Dr. Larm is an allergist and was an approved provider of Medicaid Services under Hawaii's Medicaid Program from July 1979 to June 1983. Mrs. Larm was his office manager during that period. The Hawaii Department of Social Services and Housing administers the program, and the Hawaii Medical Service Association (HMSA) handles the claims. The HMSA claim forms have a coding system to allow for prompt, uniform determination of the services provided and the appropriate reimbursement. A code book contains a brief explanation of the service to be matched with the codes on the claim form.

In 1984 the grand jury indicted the Larms on ninety-eight counts of Medicaid fraud. Counts 1–84 (office visit counts) alleged that the Larms submitted claims to the HMSA for "office visits" although Dr. Larm neither saw the patients nor personally rendered the services. Counts 85–94 (administration counts) alleged that the Larms not only claimed false office visit charges, but also administration charges for injections which the patients administered themselves. Counts 95–98 (allergy counts) alleged that the Larms falsely submitted claims for allergy shots. The total of the excess charges was $882.21.

The jury convicted Dr. Larm on seventeen counts which involved claim forms he signed, and acquitted him on the other charges. The jury convicted Mrs. Larm, who oversaw all the billing, on all but the allergy counts.

 The Larms principal contention is there was insufficient evidence of guilt. To prevail on this argument, they must show that no rational jury could find guilt beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979). To prove Medicaid fraud, the government must show a knowingly false statement of material fact made in an application for benefits from a federally approved state Medicaid plan. *See* 42 U.S.C. § 1396h(a)(1).

 The Larms' most serious attack on the office visit counts is that the statements were not false. It is undisputed that in each of the office visit counts (and the administration counts) the Larms used billing code 90040. Code 90040 is defined as a "[b]rief examination, evaluation and/or treatment, same or new illness." This is further defined as "includ[ing] a brief or interval history, examination, discussion of finding and/or rendering of service." The treatment given in each case was a routine allergy shot administered by a nurse, when

Dr. Larm was not in the office. The Larms argue that this treatment fits within the meaning of the definition, and the evidence of falsity was thus insufficient.

Two factors converge to convince us of the sufficiency of the evidence of falsity. The first is that code 90030, appearing on the same page as 90040, is defined as follows: "Minimal service: injections, minimal dressings, etc., not necessarily requiring the presence of a physician." This code fits exactly the service rendered in the office visit counts. Since each code corresponds to a different billing amount, it is clear that these codes are intended to be exclusive of each other. The snug fit between 90030 and the service actually rendered forecloses any argument that 90040 was the correct code.

The second factor is that an HMSA representative testified that he twice informed the Larms that a 90040 billing required the physician's presence. Although the Larms attack the credibility of this testimony, the jury was entitled to believe the HMSA representative. The evidence of falsity on the office visit counts was sufficient.

■ The Larms next argue that they did not knowingly and willfully make the false statements. We have explained why the evidence supports a finding that the statement was false. It remains to be shown also that the Larms knew of the falsity, for an element of the crime is the specific intent to make a false statement. *United States v. Crooks*, 804 F.2d 1441, 1448 (9th Cir.1986).

There is ample evidence of knowledge of falsity. Mrs. Larm managed the office and oversaw the billing process. Dr. Larm signed all the claims that formed the bases for his convictions. The testimony that an HMSA representative called the Larms' attention to the point is also relevant. These facts were sufficient to allow the jury to find the Larms knew that code 90040 was being used.

■ The Larms argue that the government failed to prove that the claims were part of a federally approved program. However, an HMSA official testified that the federal government oversees the program, and therefore the Larms' argument is meritless.

■ We turn now to the sufficiency of the evidence on the administration counts. The administration counts combine a charge that the Larms used code 90040 falsely, as well as charging for the administration of injections that the patients administered themselves. For the reasons we discussed above, the jury could properly find that the use of code 90040 was knowingly false. The testimony established that the patients did in fact self-administer the serum, and the Larms knew that an administration charge was inappropriate. The evidence was sufficient on the administration counts.

■ Dr. Larm also challenges the sufficiency of the evidence on the allergy counts. One of his nurses testified that on the occasions recited in the indictment, he charged for more expensive allergy serum when the medication actually given was less expensive bee extract serum. The nurse testified that she reported the overcharge to Dr. Larm, and he replied that his office "would make an adjustment." No adjustment was ever made, and the jury was entitled to credit the nurse's testimony. There was sufficient evidence on the allergy counts.

■ The Larms finally contend that the district court erred in not instructing the jury on the question whether the statements made were material, but rather deciding for itself that the statements were material as a matter of law. The Larms rely on *United States v. Valdez*, 594 F.2d 725 (9th Cir.1979). In *Valdez* the government charged that the defendants forged employment letters for the purpose of gaining aliens visas to enter the country, a violation of 18 U.S.C. § 1001. We concluded that the materiality of the letters was an issue of fact for the jury. However, we have since limited *Valdez*. In *United States v. Flake*, 746 F.2d 535 (9th Cir.1984), *cert. denied*, 469 U.S. 1225, 105 S.Ct. 1220, 84 L.Ed.2d 360 (1985), we concluded that the question of whether false statements

on a tax return were material was for the judge. We discussed *Valdez*, and ultimately distinguished it solely on the grounds that we were "concerned with a different statute." *Flake*, 746 F.2d at 537. In *Flake* we also noted that a long line of cases has applied or made mention of the rule that the materiality of a perjured statement is a question of law. *See, e.g., Sinclair v. United States*, 279 U.S. 263, 298, 49 S.Ct. 268, 273, 73 L.Ed. 692 (1929); *United States v. Taylor*, 574 F.2d 232, 235 (5th Cir.), *cert. denied*, 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978); *United States v. Percell*, 526 F.2d 189, 190 (9th Cir.1975); *Carroll v. United States*, 16 F.2d 951, 953 (2d Cir.) (cited with approval in *Sinclair*), *cert. denied*, 273 U.S. 763, 47 S.Ct. 477, 71 L.Ed. 880 (1927). We find no principled way to distinguish this case from the perjury cases. Both concern the question of whether a false statement is reasonably calculated to induce reliance. Further, the Eighth Circuit has concluded that materiality under section 1396h(a)(1) is a question of law. *See United States v. Brown*, 763 F.2d 984, 993 (8th Cir.), *cert. denied*, 474 U.S. 905, 106 S.Ct. 273, 88 L.Ed.2d 234 (1985). Absent some good reason to do so, we are disinclined to create a direct conflict with another circuit. We think, therefore, that the weight of the authority requires us to conclude that the district court properly treated the question as one of law. Even, however, if we were to reach the opposite result, we would conclude that the error was harmless, because the statements here undoubtedly were material, designed as they were to induce payment. *See Valdez*, 594 F.2d at 729 (overwhelming evidence of materiality made treating it as an issue of law harmless error).

■ The Larms make a due process challenge to their conviction. They point out that the code book was never adopted as a rule in conformance with the Hawaii Administrative Procedure Act. *See* Haw. Rev.Stat. §§ 91–3 to 91–15. They argue they lacked fair notice that their conduct was illegal.

This argument is without merit. The Larms were prosecuted under 42 U.S.C. § 1396h(a)(1), not the billing codes. The statute gives fair notice of the proscribed conduct. The codes only become relevant because they inform us on the question of whether the statements were false. The Larms knew that writing code 90040 on the claim form would cause the HMSA to act under the misapprehension that Dr. Larm had actually seen the patient, and the fact that code 90040 was not a formally adopted administrative regulation is irrelevant.

It is the statute that must give sufficient notice of the proscribed conduct, both through adequate promulgation and definiteness in its language. *See United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989 (1954). Here, the statute forbids knowingly false material statements, terms that are adequate to inform the ordinary person of its bounds. Any attack on the billing codes which formed the factual backdrop that made the statements false is ultimately an attack on the sufficiency of the evidence. *See id.* at 618, 74 S.Ct. at 812 (a statute is not void for vagueness despite the existence of borderline cases of applicability). If the Larms had proved that they did not know of the codes, or had proved that the codes were too vague to be understood, then there could be no knowingly false statement. But the jury found that they understood the significance of the billing codes that they used, and the record supports this finding.

The judgment of the district court is AFFIRMED.

WIGGINS, Circuit Judge, concurring in part and dissenting in part:

I respectfully dissent from that portion of the opinion affirming the Larms' convictions on the office visit counts. The Larms should not be criminally liable for making a false statement under 42 U.S.C. § 1396(h)(a)(1) when the statement they made was literally true under HMSA's ambiguous published billing codes.

The Larms used code 90040 to bill HMSA for nurse-administered allergy shots when

Dr. Larm was not in the office. This, the majority holds, is a false statement on an application for Medicaid because code 90040 requires that the physician personally have treated the patient. However, HMSA's published guidelines defining code 90040 make no mention of the physician's presence, requiring instead a "[b]rief examination, evaluation and/or treatment, same or new illness," "includ[ing] a brief or interval history, examination, discussion of finding and/or rendering of service." The Larms' use of code 90040 was literally correct under HMSA's definition. The administration of a shot is indisputably a "[b]rief ... treatment," including a "rendering of service."

I agree that an alternate code more closely tracked the type of service the Larms provided. The guidelines define code 90030 as "Minimal service: injections, minimal dressings, etc., not necessarily requiring the presence of a physician." But the literal truth of the Larms' statement under code 90040 precludes a prosecution for making a false statement in an application for Medicaid under section 1396(h)(a)(1). *See Bronston v. United States*, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973) (wily witness who succeeds in derailing questioner does not commit perjury so long as he speaks literal truth); *United States v. Sainz*, 772 F.2d 559, 562–65 (9th Cir.1985) (same); *see also United States v. Poutre*, 646 F.2d 685 (1st Cir.1980) (18 U.S.C. § 1001, prohibiting false statements to federal officials, cannot be invoked when an evasive statement is literally true).

When the government issues imprecise billing codes, physician-providers should not have to guess at their meaning at the risk of criminal prosecution under section 1396(h)(a)(1). If HMSA wishes to restrict the use of code 90040 to services physically provided by the physician, it can do so. But the government cannot subject a physician to prosecution for falsely stating that he complied with the physical presence requirement unless it precisely articulates that requirement. *Bronston*, 409 U.S. at 362, 93 S.Ct. at 601 ("Precise questioning is a predicate for the offense of perjury");

*Sainz*, 772 F.2d at 564 (a witness "cannot be forced to guess at the meaning of the question to which he must respond upon peril of perjury").

Nor was the ambiguity cured by the HMSA claims examiner's oral advise to the Larms that code 90040 was proper only if the physician personally treated the patient. A government employee's oral advise on the interpretation of an unclear government regulation is too weak a foundation upon which to base a false statement prosecution. The inherent uncertainties of oral interpretations counsel against such a prosecution. The physician-provider has no basis to evaluate whether the employee's interpretation is the agency's official one. Indeed, it is conceivable that the physician could receive conflicting advise from different government employees on the interpretation of the regulation.

Absent an authoritative agency interpretation—preferably published—clarifying the agency's ambiguous billing codes, it is improper to prosecute a doctor for pressing a reasonable code interpretation. *See United States v. Dahlstrom*, 713 F.2d 1423, 1428 (9th Cir.1983) (prosecution under 26 U.S.C. § 7206(2) for willful filing of false tax returns is inappropriate for a taxpayer's advocating a tax shelter, the legality of which was "completely unsettled by any clearly relevant precedent") (citing *United States v. Garber*, 607 F.2d 92, 100 (5th Cir.1979) (a criminal prosecution under section 7206 "is an inappropriate vehicle for pioneering interpretations of tax law")), *cert. denied*, 466 U.S. 980, 104 S.Ct. 2363, 80 L.Ed.2d 835 (1984); *see also Bell v. United States*, 349 U.S. 81, 83–84, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955) (rule of lenity requires resolving ambiguity in criminal statute in favor of defendant).

The Larms' use of code 90040 was literally true under HMSA's ambiguous guidelines. The claims examiner's oral advice did not cure the ambiguity. Consequently, the Larms' convictions on the office visit counts should not stand.