977 F.2d 583
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Petitioner-Appellant,
v.
Jerry NICHOLS and Charlotte Nichols, Respondent-Appellee.
 Nos. 91-6374, 91-6375.
 United States Court of Appeals, Sixth Circuit.
 Sept. 25, 1992.
 
 Before DAVID A. NELSON, ALAN E. NORRIS and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendants appeal their convictions on one count of conspiracy in violation of 18 U.S.C. § 371, five counts of mail fraud in violation of 18 U.S.C. § 1341, and seventy-two counts of Medicaid fraud in violation of 42 U.S.C. §§ 1395nn and 1320a-7b. Finding no merit to their contentions, we AFFIRM.
 
 I.
 
 2
 Dr. Jerry Nichols and his wife, Charlotte Nichols, ran a dental office in Leitchfield, Kentucky. Dr. Nichols was the primary dentist and Charlotte was the office manager. Together they supervised the staff and oversaw office operations. In 1980, Dr. Nichols set up a new computer program for billing which separated patients into three categories: private paying, insured, and Medicaid. The computer would generate a bill based on the client's category. The computer system was used to inflate charges sent to Delta Dental of Kentucky, Blue Cross/Blue Shield of Kentucky, and to Medicaid. Dr. Nichols was the only person to program the fees with this system, and his wife suggested the appropriate fee.
 
 
 3
 In May of 1988 Sergeant Terry Barnes of the Kentucky State Police was contacted by a concerned citizen, Barbara Williams, who informed him that defendants were making fraudulent insurance claims. Williams, a former employee of defendants, provided information regarding specific patients whose insurance company had been billed even though no dental work was ever performed. She also sent Barnes a package of documents which she had previously removed from defendants' office, which substantiated her allegations.
 
 
 4
 After receiving the information, Sergeant Barnes contacted Williams and requested that she retrieve additional proof from the Nichols' office. He also contacted one of the patients, who corroborated William's allegation that defendants had billed for dental work on her husband that had not been performed. Barnes relayed the information to Special Agent Glenn Rogers of the Federal Bureau of Investigation, who then prepared an affidavit in support of a request for a search warrant. The search warrant was issued and executed on June 9, 1988.
 
 
 5
 Defendants' first trial was declared a mistrial by the court on July 26, 1991, due to the prosecutor's statements made during his rebuttal argument. At the second trial, defendants were convicted on Count I (conspiracy), Counts 15, 17, 18, 19, and 120 (mail fraud), and Counts 124, 126-141, 143-241, and 243-299 (Medicaid fraud). This appeal followed.
 
 II.
 A. Mail Fraud
 
 6
 Defendants argue that their convictions under 18 U.S.C. § 1341 should be reversed because the government failed to prove that the scheme was designed to deprive the victims of "money or property" as required by McNally v. United States, 483 U.S. 350 (1987). They maintain that since the insurance companies paid a fixed fee for each procedure regardless of the inflated nature of the submitted charge, all the companies were deprived of was accurate information, an intangible right.[1]
 
 
 7
 This argument is not supported by the record. The evidence showed that defendants submitted claims for services never rendered or billed at inflated rates. Submission of the latter deprived Delta Dental of money even though they had fixed rates for the various procedures, since Delta would pay the dentist's actual fee if it were lower than the predetermined ceiling. By inflating their charges defendants were assured of always receiving the maximum allowable amount, regardless of where it coincided with their usual charge for a particular service. Thus, in a very real sense, defendants deprived their victims of money.
 
 
 8
 Additionally, defendants schemed to obtain money by waiving co-payment, which was a condition of payment from Delta Dental; as was veracity in reporting the actual billing rate. An employee of Delta Dental testified that if either condition were violated, the company would not pay anything on the claim. Thus, defendants' conduct was clearly with the parameters of the mail fraud offense. See United States v. Campbell, 845 F.2d 1374, 1382-83 (6th Cir.1988) (upholding mail fraud conviction of ophthalmologist who billed Medicaid for unnecessary and inappropriate medical treatments as scheme to obtain money from patients and the government), cert. denied, 493 U.S. 828 (1989).
 
 
 9
 In essence, defendants claim that because the scheme was ultimately unsuccessful, there can be no offense under 18 U.S.C. § 1341. Proof of actual loss is not required, however, only intent to defraud. United States v. Ames Sintering Co., 927 F.2d 232, 235 (6th Cir.1990). See also United States v. Kerkman, 866 F.2d 877, 879 (6th Cir.) (mail fraud statute "applies only to schemes or artifices which defraud or attempt to defraud...."), cert. denied, 493 U.S. 828 (1989). Moreover, to the extent that the predetermined fees made defendants' monetary interest intangible, their action still falls within the purview of the mail fraud statute because section 1341 "applies to any fraudulent scheme involving a money or property interest, whether that interest is tangible or intangible." United States v. Ethridge, 948 F.2d 1215, 1217 (11th Cir.1991) (rejecting similar argument where fire insurance policy limits prevented defendants from seeking reimbursement for property not destroyed in addition to items actually burned by fire since limits did not change essential character of scheme to defraud insurance company of money) (emphasis in original; citation omitted). See also Kerkman, 866 F.2d at 879 (property rights include both tangible and intangible property rights). We therefore find this contention to be without merit.
 
 B. Medicaid Fraud
 
 10
 Defendants maintain that the evidence is insufficient to establish that they knowingly and willfully made a false claim to Medicaid for a "removable appliance" in violation of 42 U.S.C. § 1320a-7b. Our role on appeal is to determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979).
 
 
 11
 The evidence adduced at trial easily supports defendants' conviction for Medicaid fraud. Dr. Robert Fowler, Director of the State Dental Program, testified at trial that patient Brittany Dennison's records "indicated that she was fitted with a fixed comprehensive orthodontic appliance," and not a "removable appliance" for minimum tooth movement as claimed by defendants. The patient's mother confirmed that braces were installed. In addition, the defendants' bookkeeper testified that their actions were part of a scheme to make Medicaid pay for braces. Finally, Dr. Nichols himself admitted that he knew the code numbers distinguished between procedures for minor and major tooth movement, and that Medicaid did not cover braces. In sum, the record supports the jury's finding of Medicaid fraud.
 
 C. Materiality
 
 12
 Defendants next assert that the trial court erred by instructing the jury that the inflated Medicaid claims submitted for x-rays constituted statements of "material" fact under 42 U.S.C. § 1320a-7b. They argue that "[t]he cost portion of the claim is immaterial [as] Medicaid only pays its usual and customary rate."
 
 
 13
 The issue of "materiality" is a legal question. See United States v. Larm, 824 F.2d 780, 784 (9th Cir.1987) (materiality under section 1396h(a)(1) [predecessor to 42 U.S.C. § 1320a-7b] is question of law), cert. denied, 484 U.S. 1078 (1988); United States v. Brown, 763 F.2d 984, 993 (8th Cir.), cert. denied, 474 U.S. 905 (1985) (same). See also United States v. Chandler, 752 F.2d 1148, 1152 (6th Cir.1984) (involving prosecution under similar statute, 18 U.S.C. § 1001). This court has held that materiality is established where the false statement had a "natural tendency to influence, or be capable of affecting or influencing," a function performed by a government agency. United States v. Steele, 933 F.2d 1313, 1319 (6th Cir.) (citing Chandler, 752 F.2d at 1151) (en banc), cert. denied, 112 S.Ct. 303 (1991). Furthermore, it is not necessary to prove actual reliance on the statement by the agency, only the capacity to influence. Id. Our review of a materiality determination is de novo. Id.
 
 
 14
 That the amount of the bill was a material fact is evidenced by defendants' participation agreement with Medicaid, which required defendants to charge Medicaid the same rate charged to all patients. Moreover, Mrs. Nichols admitted that she inflated the bills for bitewing x-rays to compensate for other items not covered by Medicaid; and the inflated fees caused Medicaid to overpay the Nichols by nearly $12,000. Thus, the cost portions of the claim clearly influenced the agency's decision. We find no error in the instruction.
 
 D. Double Jeopardy
 
 15
 Defendants contend for the first time on appeal that a comment made by the prosecutor in the first trial, which resulted in a mistrial, should have barred a retrial. Defendants are entitled to review of this claim only for plain error, due to their failure to file a motion for dismissal after the mistrial. United States v. Thomas, 875 F.2d 559, 562 n. 2 (6th Cir.), cert. denied, 493 U.S. 867 (1989). Notwithstanding, we conclude that the claim fails even under plenary review.
 
 
 16
 Prosecutorial misconduct does not bar retrial absent intent on the part of the prosecutor to "goad" the defendant into moving for a mistrial. Oregon v. Kennedy, 456 U.S. 667, 675-76 (1982); United States v. Thomas, 728 F.2d 313, 318-19 (6th Cir.1984). We have reviewed the closing arguments of counsel and are satisfied that the prosecutor's comments can only be characterized as a "fair response" to defense counsel's closing argument, rather than a deliberate attempt to highlight defendants' failure to testify or produce evidence. See United States v. Robinson, 485 U.S. 25, 33-34 (1988); United States v. Young, 470 U.S. 1 (1985); United States v. Beddow, 957 F.2d 1330, 1336 (6th Cir.1992); United States v. Drake, 885 F.2d 323, 324 (6th Cir.), cert. denied, 493 U.S. 1033 (1990). In any event, from the broader perspective of the arguments and context the entire trial, any damage was minimal. Beddow, 957 F.2d at 1336-37; Drake, 885 F.2d at 324-25.
 
 E. Search Warrant
 
 17
 Defendants' attack on the search warrant is two-fold: first that it was improvidently granted because the informant's reliability was not sufficiently established; and secondly, that it was based on illegally obtained documents.
 
 
 18
 It is well-settled that a magistrate's determination of probable cause affords great deference by the reviewing court. United States v. Leon, 468 U.S. 897 (1984); Illinois v. Gates, 462 U.S. 213, 237 (1982). The affidavit stated that Sergeant Barnes had discussions with a concerned citizen, with first-hand knowledge, who described the Nichols' illegal activity; and that he received documents that corroborated those statements. Direct knowledge, United States v. Wasserstrom, 571 F.2d 351, 352 (6th Cir.1978); and detailed specific information, see United States v. Dudek, 560 F.2d 1288, 1293 (6th Cir.1977), cert. denied, 434 U.S. 1037 (1978); are strong indicia of reliability. Furthermore, the affidavit stated that Sergeant Barnes confirmed some of the information with one of the individuals mentioned by the concerned citizen. We therefore find that the affidavit contained sufficient information to substantiate the informant's reliability, and thus to uphold the warrant under Leon.
 
 
 19
 Defendants' second assignment of error also fails. Barbara Williams's testimony at the suppression hearing revealed that she collected documents both prior to and subsequent to any request by Sergeant Barnes. On the basis of these facts, the district court correctly ruled that only the second set of documents should be suppressed, since Williams could not be considered a state actor for Fourth Amendment purposes until Barnes sought her assistance and she acquiesced. United States v. Lambert, 771 F.2d 83, 89 (6th Cir.), cert. denied, 474 U.S. 1034 (1985).
 
 
 20
 For all the foregoing reasons, defendants' convictions are AFFIRMED.
 
 
 
 [1]
 The fraud statute has been amended to incorporate the intangible rights theory. Anti-Drug Abuse Act of 1988, Pub.L. No. 100-690, § 7603, 102 Stat. 4181, 4508, codified at 18 U.S.C. § 1346; United States v. Davis, 873 F.2d 900, 902 (6th Cir.1989). Defendants were not charged under this theory, however