**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Tyler Leroy NICHOL, Defendant—
Appellant.**

**United States of America,
Plaintiff—Appellee,**

v.

**Lee Arthur Rice, Defendant—
Appellant.**

**United States of America,
Plaintiff—Appellee,**

v.

**Kevin P. Pawlik, Defendant—
Appellant.**

Nos. 03–30181, 03–30183, 03–30184.

United States Court of Appeals,
Ninth Circuit.

Argued March 7, 2005.

Submitted on June 6, 2005.

Decided June 6, 2005.

Monte Stiles, Esq., Thomas E. Moss, Esq., Office of the U.S. Attorney, Boise, ID, for Plaintiffs-Appellees.

Teresa A. Hampton, Esq., Hampton & Elliott, J. Curtis Cox, Sallaz & Gatewood, Chtd., Greg S. Silvey, Esq., Scott Gatewood, Esq., Boise, ID, Tyler Leroy Nichol, Nellis FPC CS 4500, North Las Vegas, NV, for Defendants-Appellants.

Before FERNANDEZ, TASHIMA, and GOULD, Circuit Judges.

## MEMORANDUM *

Tyler L. Nichol, Lee A. Rice, and Kevin P. Pawlik appeal their jury convictions and sentences for various offenses arising from an alleged conspiracy to distribute MDMA (ecstasy) and LSD in violation of 21 U.S.C. §§ 841(a)(1) and 846. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part and remand in part.

■ We begin by addressing the defendants' vouching claims. Improper vouching occurs when the prosecution "implies that the government can guarantee the witness's veracity" by (1) "placing the prestige of the government behind a wit-

ness through personal assurances of the witness's veracity"; or (2) "suggesting that information not presented to the jury supports the witness's testimony." *United States v. Daas*, 198 F.3d 1167, 1178 (9th Cir.1999).

The prosecution did not engage in improper vouching when it elicited testimony from the government's cooperating witnesses "regarding their veracity, willingness to take polygraphs, and assistance to law enforcement on other unrelated cases." Because defense counsel impugned the veracity of the government's witnesses by raising the issue of the witnesses' plea agreements on cross-examination, and by extensively attacking the witnesses' credibility during opening arguments, the prosecution was entitled to respond by questioning the witnesses about the truthfulness requirements in their plea agreements, *United States v. Monroe*, 943 F.2d 1007, 1014 (9th Cir.1991), and by "focus[ing] the jury's attention on [any other] incentives [its witnesses] had to tell the truth," *Daas*, 198 F.3d at 1179.

■ The prosecution's questioning of DEA agent, Niles Gooding, likewise did not amount to reversible error.[1] First, in asking Gooding on redirect why Gooding had not testified often at trial, the prosecutor was countering the defense's efforts to undermine Gooding's credentials, investigative techniques, and experience on cross-examination. Although Gooding's response refers to the extra-record fact that most drug defendants plead guilty, we cannot say that "it is more probable than not

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Because defense counsel objected to the prosecution's questioning of Gooding at trial, our review is for harmless error. *United States v. Hermanek*, 289 F.3d 1076, 1098 (9th Cir.2002). "In applying a harmless error analysis in the context of vouching, we must determine whether it is more probable than not that the prosecutor's conduct materially affected the fairness of the trial." *Id.* at 1102.

that [this testimony] materially affected the fairness of the trial," given the overwhelming evidence against the defendants. *Hermanek*, 289 F.3d at 1102. Thirty other witnesses testified in support of the government's case against the defendants. These witnesses included other co-conspirators, and former friends and girlfriends of the defendants, many of whom gave testimony that corroborated that of the others in detail.

■ Second, the prosecutor erred in asking Gooding about the weight he would give the consistent testimony of multiple witnesses, and about whether he thought the witnesses lacked motive to lie to assist the government because they feared the defendants. "[C]ounsel should not ask one witness to comment on the veracity of the testimony of another witness." *United States v. Geston*, 299 F.3d 1130, 1136 (9th Cir.2002) (quoting *United States v. Sullivan*, 85 F.3d 743, 749–50 (1st Cir.1996)). Our precedents are clear that "[i]t is the jurors' responsibility to determine credibility by assessing the witnesses and witness testimony in light of their own experience" and that "[t]estimony regarding a witness' credibility is prohibited unless it is admissible as character evidence." *United States v. Sanchez–Lima*, 161 F.3d 545, 548 (9th Cir.1998) (reversing conviction because federal agent "testified that, based on his training and experience, [another witness] was telling the truth"). The questions to Gooding and his responses challenged by the defendants invaded the province of the jury to draw conclusions about the weight of the evidence and witness credibility. Nonetheless, we conclude this was harmless error. The prosecutor's examination of Gooding does not warrant reversal of the defendants' convictions in light of the strength of the government's case, as proven by other evidence, and the district court's instructions to the jury that it should determine credibility for itself and that "[t]he weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify."

■ We also conclude that the prosecutor's closing remarks were not improper. The prosecutor's comments regarding the veracity and credibility of the government officers involved in the prosecution of the defendants were an appropriate response to the defense's assertions that the government was using deception and stretching to sell its case to the jury. *United States v. Flake*, 746 F.2d 535, 539–41 (9th Cir. 1984) (holding that there was no improper vouching where prosecutor was acting in "self-defense" and was merely "ask[ing] the jury to disregard defense counsel's insinuation that the government had intentionally deceived the jury").

■ We next address Pawlik and Nichol's claim that the district court erred in rejecting two proposed jury instructions.[2] Pawlik and Nichol's briefing of this issue is deficient; they cite to the proposed jury instructions rejected by the district court, and to two cases without explaining how the instructions the district court used were inadequate or why the panel should accept the proposed instructions as "[t]he preferred instructions" just because they were "found to be indicated in the similar cases of *U.S. v. Montgomery*, 150 F.3d 938 [983], 100[2] (9th Cir.1998) and *U.S. v. Canas*, 595 F.2d 73, 80–81 (1st Cir.1979)." Accordingly, we hold that this issue has been waived by Pawlik and Nichol's inadequate briefing and presentation of this issue. *See* Federal Rules of Appellate Pro-

**2.** Although the instructions were submitted by another co-defendant, Eric Shira, Pawlik and Nichol both joined in Shira's instructions.

cedure Rule 28(a)(9)(A); *see also United States v. Panaro*, 266 F.3d 939, 951–52 (9th Cir.2001) (declining to review issue where appellant made only general assertions of error and failed to identify the particular problems he was seeking to challenge); *United States v. Alonso*, 48 F.3d 1536, 1544 (9th Cir.1995) ("Appellate courts frequently refuse to address issues that appellants fail to develop in their briefs.").

■ Rice also claims that the government committed reversible error "by implying [that Rice's witness, Douglas Seitz] had engaged in criminal behavior, when in fact the government had no good faith basis for making such implications" because the government knew that Seitz's prior convictions were inadmissible under Federal Rule of Evidence ("FRE") 609 when it inquired into Seitz's criminal history on cross-examination.[3] Seitz's 1982 convictions for contributing to the delinquency of a minor by procuring alcohol were inadmissible because FRE 609 only provides for impeachment by prior *felony* convictions if the underlying crime is not one of "dishonesty or false statement," and Seitz's prior convictions were for misdemeanors. Thus, there was no good faith basis for the prosecution's inquiry into Seitz's criminal history.

We reject the government's argument that the prosecution was acting within its bounds because it was simply seeking to impeach Seitz by contradicting the lie Seitz told earlier during cross-examination about having "no prior criminal history at all." The prosecution cannot induce a witness to testify about his or her criminal history with the knowledge that it has no admissible convictions to back up its inquiry and then impeach the witness with otherwise inadmissible convictions when the witness happens to lie about his or her criminal record. *See United States v. Whitson*, 587 F.2d 948, 952–53 (9th Cir.1978) ("It is error to permit the government to proceed to impeach its own induced statements with inadmissible evidence.").

Still, notwithstanding that the trial court plainly erred in permitting the prosecutor to impeach Seitz with otherwise inadmissible misdemeanor convictions, this impeachment did not affect Rice's substantial rights where Seitz's only purpose in testifying was to bolster Rice's credibility and where there was voluminous testimonial evidence contradicting Rice's testimony that he had been oblivious to the drug sales in his club and had never reached any agreement to receive proceeds from these sales. Steven Blair, the co-owner of Rice's club, testified that Rice had full knowledge of the drug sales at the club, and that there was an understanding that Rice and Blair would receive about $5000 a month for keeping other dealers out of the club. Other witnesses corroborated Blair's statements by attesting to their own personal knowledge of an agreement between Rice and Blair and the drug dealers whereby Rice and Blair would receive a percentage of the profits from drugs sold in their club. There was testimony about a meeting attended by Rice where drug sales were discussed. There was testimony that Rice was present at every rave

---

**3.** Where, as here, defense counsel did not object to the alleged prosecutorial misconduct at trial, "we review under the more deferential plain error standard." *United States v. Sanchez*, 176 F.3d 1214, 1218 (9th Cir.1999). Under the plain error standard, we will reverse only if "there was 'error,' the error was 'plain,' and the error affected 'substantial rights.'" *United States v. Pacheco–Zepeda*, 234 F.3d 411, 413 (9th Cir.2000). Even if these criteria are met, we may exercise our discretion to correct the error "only if such error 'seriously affect[s] the fairness, integrity, or public reputation of the judicial proceedings.'" *Id.*

party and in areas of the club where drug use was obvious and rampant. In light of this evidence of Rice's guilt, we decline to reverse Rice's conviction despite the improper impeachment of his character witness.

■ We next consider the claim that the prosecutor improperly commented on Rice's exercise of his right against self-incrimination by asking Rice if he had "ever told this [exculpatory story he had just testified to on direct examination] to anyone?"[4] In *Doyle v. Ohio*, the Supreme Court set forth a general rule that prosecutors may not "seek to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story after receiving Miranda warnings at the time of his arrest." 426 U.S. 610, 611, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). But the prosecutor's question here did not amount to a *Doyle* violation because the trial court acted promptly to prevent "the inquiry that *Doyle* forbids" by "explicitly sustain[ing] an objection to the only question that touched upon [Rice's] post-arrest silence" before Rice could even respond, prohibiting the prosecutor from posing further questions on the topic, and "advis[ing] the jury that it should disregard any questions to which an objection was sustained." *Greer v. Miller*, 483 U.S. 756, 764–65, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987).

■ The absence of a *Doyle* violation, however, does not end the inquiry because "the fact remains that the prosecutor attempted to violate the rule of *Doyle* by asking an improper question in the presence of the jury," and that this prosecutorial misconduct may have "so infec[ted] the trial with unfairness as to make the resulting conviction a denial of due process." *Greer*, 483 U.S. at 765, 107 S.Ct. 3102. "When a defendant contends that a prosecutor's question rendered his trial fundamentally unfair, it is important 'as an initial matter to place the remark in context.'" *Id.* at 766, 107 S.Ct. 3102. Here there was a single question, followed by an immediate objection. Thereafter, the prosecutor abandoned his attempt to impeach Rice with his pretrial silence, and questioned Rice on other matters. There was no immediate curative instruction by the district court, but none was requested, and at the end of the trial the court instructed the jury that "questions . . . by lawyers are not evidence." Moreover, as explained above, Rice's testimony was directly contradicted by that of several other witnesses. Under these circumstances we hold that the prosecutor's improper question did not violate Rice's due process rights. *Id.* at 765–66, 107 S.Ct. 3102 (holding that there was no due process violation occasioned by prosecutor's attempt to violate *Doyle* on closely analogous facts).

■ For the foregoing reasons, the convictions are affirmed. We finally turn to the defendants' sentencing claims. All the defendants have asserted that their sentences are plainly erroneous in light of the

---

**4.** "We review de novo whether references to a defendant's silence violate the Fifth Amendment privilege against self-incrimination." *United States v. Bushyhead*, 270 F.3d 905, 911 (9th Cir.2001). Where there was no objection to the prosecutor's comments, review is for plain error. *United States v. Amlani*, 111 F.3d 705, 714 (9th Cir.1997). However, where the defendant timely objects, harmless error review applies. *United States v. Ve-* *larde–Gomez*, 269 F.3d 1023, 1035 (9th Cir. 2001) (en banc). The record is unclear whether Rice timely objected to the challenged question on right to silence grounds, but the government stated in its brief that we should review for harmless not plain error. "A constitutional error may be disregarded only if it is harmless beyond a reasonable doubt." *Bushyhead*, 270 F.3d at 911.

Supreme Court's decision in *United States v. Booker*, which rendered the Sentencing Guidelines advisory. —— U.S. ——, 125 S.Ct. 738, 757, 160 L.Ed.2d 621 (2005). Because "it is not possible to reliably determine from the record whether the sentence[s] imposed would have been materially different had the district court known that the Guidelines were advisory, we will remand to the sentencing court," with instructions that the district court follow the procedures outlined in *United States v. Ameline*, 409 F.3d 1073, 1084–85 (9th Cir. 2005).[5]

AFFIRMED in part and REMANDED in part.

**5.** Because we remand on the *Booker* issue, we do not now decide any of the other sentencing errors alleged by the defendants.